IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Philip A. Brimmer**

Civil Action No. 08-cv-01639-PAB-BNB

GALLAGHER'S NYC STEAKHOUSE FRANCHISING, INC.,

      Plaintiff,

v.

1020 15th STREET, INC. and
BRUCE RAHMANI,

      Defendants.
_____

Civil Action No. 08-cv-01896-PAB-BNB

1020 15th STREET, INC.,

      Plaintiff,

v.

GALLAGER'S (sic) STEAKHOUSE-GRAND CENTRAL
OYSTER BAR FRANCHISING, INC.,

      Defendant.
_____

**ORDER**
_____

      This matter comes before the Court on Plaintiff's Motion for Contempt Sanctions [Docket No. 29]. The Court held a hearing on this motion on November 25, 2008, at which time both sides presented evidence. Based on the evidence, the arguments of the parties, and the briefs submitted, the Court makes the following findings of fact and conclusions of law:

A.  Findings of Fact

      1.  Plaintiff Gallagher's NYC Steakhouse Franchising, Inc. filed a complaint on August 1, 2008 seeking preliminary and permanent injunctive relief against its former franchisee, 1020 15th Street, Inc., and against defendant Bruce Rahmani as a

guarantor of the franchise agreement and as a signator to a non-competition agreement. The complaint alleges breaches of the franchise agreement and non-competition agreement, among other claims. The restaurant at issue was the Gallagher's restaurant located at 1480 Arapahoe Street in Denver, Colorado. Gallagher's restaurants are operated as steakhouses.

2. On October 2, 2008, the Court held an evidentiary hearing on plaintiff's request for a preliminary injunction.[1] The Court indicated its intention to grant the motion for preliminary injunction and, among other things, enjoin Mr. Rahmani from operating a Gallagher's restaurant or other steakhouse at 1480 Arapahoe Street. The Court instructed the parties to prepare a form of order to that effect. The terms of the preliminary injunction order were subject to a hearing on October 6, 2008.

3. On October 6, 2008, U.S. Motels Ft. Collins, Inc., an entity controlled by defendant Rahmani, leased the former Gallagher's space, which that entity owns, to 1480 Café, LLC, an entity controlled by J. Guadalupe Gonzalez. This lease includes two other restaurants that share a common kitchen with the Gallagher's space, La Fondue and Mexican Picante Grill.

4. On October 8, 2008, the Court entered a Preliminary Injunction (hereinafter referred to as the "Order"), which became effective on Oct. 7, 2008 at 5:00 pm. The Order [Docket No. 28] states in pertinent part:

> Paragraph One. "A Preliminary Injunction is entered enjoining Defendants, and any and all entities in which they have a direct or beneficial interest, and any and all persons or entities working in concert with them as follows:
>> (i) From directly or indirectly at any time or in any manner operating or doing business under any name or in any manner which might tend to give the general public the impression that defendants are operating a Gallagher's Restaurant, or any business similar thereto. . . ."

> Paragraph Two. "A Preliminary Injunction is entered enjoining Defendants, and any and all entities in which they have a direct or beneficial interest, and any and all persons or entities working in concert with them as follows:
>> (i) From violating the covenant not to compete in the parties' Franchise Agreement by directly or indirectly engaging in any other steakhouse restaurant business . . . ."

---

[1] Chief Judge Edward J. Nottingham was assigned to this case until its re-assignment on October 31, 2008.

Paragraph Three. "A Preliminary Injunction is entered enjoining Defendants from effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction."

5. On October 10, 2008, plaintiff filed its Motion for Contempt Sanctions alleging that the defendants are violating the Order by continuing to operate a steakhouse at the former Gallagher's site. Specifically, plaintiff alleges that defendants are operating a restaurant called "5280 Steak House" at the former Gallagher's site through J. Guadalupe Gonzalez, a former chef at the Gallagher's restaurant and a long-time business associate of Mr. Rahmani. Motion for Sanctions at 5-6. Plaintiff also alleges that defendants took affirmative steps to associate 5280 Steak House restaurant with Gallagher's restaurant by maintaining links to Gallagher's through an OpenTable.com website and through a telephone listing that refers persons who call Gallagher's telephone number to a new number for 5280 Steak House restaurant. *Id*. at 6-7.

6. At the November 25, 2008 hearing, Gayle Ellis testified that she works for Colorado Hospitality Service, which Mr. Rahmani owns, and functions as Mr. Rahmani's assistant on matters relating to his franchise operations. In her capacity as an employee of Mr. Rahmani, Ms. Ellis assisted Mr. Gonzalez in setting up 5280 Steak House in the following ways: she helped transfer the payroll from 1020 15th Street, Inc. to 1480 Café, LLC; she instructed Qwest Communications, the telephone carrier, to discontinue the Gallagher's telephone number, but to direct callers to the new telephone number for 5280 Steak House restaurant; she successfully applied online to the Internal Revenue Service for an Employer Identification Number for 1480 Café, LLC; she assisted Mr. Gonzalez in completing the articles of incorporation for 1480 Café, LLC and filing the necessary paperwork to register 1480 Café, LLC with the Colorado Secretary of State as a business entity; she assisted Mr. Gonzalez in registering 1480 Café, LLC as a trade name with the Colorado Secretary of State; she assisted Mr. Gonzalez in applying for cabaret and liquor licenses for 1480 Café, LLC and accompanied him to the liquor license board; she assisted Mr. Gonzalez in completing various forms for local taxes; and she completed an authorization for 1480 Café, LLC to use ADP tax filing service. Neither Mr. Gonzalez nor 1480 Café, LLC compensated Ms. Ellis for this assistance. Ms. Ellis testified that, other than providing this early assistance to Mr. Gonzalez, she had not provided any subsequent assistance to Mr. Gonzalez or 1480 Café, LLC. She also said that she provided similar assistance in the past to persons to whom Mr. Rahmani transferred a lease.

7. J. Guadalupe Gonzalez testified that he is the owner of 1480 Café, LLC. From 2000 to 2003, he was a shareholder of 1020 15th Street, Inc. and the chef of the Gallagher's restaurant operated by the defendants. He signed the Franchise Agreement on behalf of 1020 15th Street, Inc. as the president of that entity in January 2000. He had business relationships with Mr. Rahmani regarding other restaurants in Denver and Boulder, Colorado. He said that he has had no involvement with 1020 15th Street since 2003. Mr. Gonzalez received a telephone call, presumably in early

October 2008, from Mr. Rahmani wherein Mr. Rahmani asked Mr. Gonzalez if Mr. Gonzalez wanted to lease the former Gallagher's space. Mr. Rahmani did not suggest that Mr. Gonzalez operate a steakhouse at that location. Rather, Mr. Gonzalez had the idea of operating an upscale steakhouse at that location; he decided to do so based on the economic realities of opening a "new concept." He told Mr. Rahmani that he was going to operate an upscale steakhouse in that location. The first day of operation for 5280 Steak House was October 7, 2008. Mr. Gonzalez acknowledged that the menu of 5280 Steak House was "pretty much the same" as Gallagher's. However, he said that he has added some new dishes to the menu and is not using any of Gallagher's special recipes. He said that he uses the same provider of meat that Gallagher's restaurant used. Mr. Gonzalez testified that he has no arrangement with Mr. Rahmani whereby Mr. Rahmani can share in any of Mr. Gonzalez's profits, buy back any of the leased restaurants, buy any stock of 1480 Café, LLC, or provide operational control of the restaurants. Mr. Rahmani testified to the same. Mr. Gonzalez said that Mr. Rahmani has had no involvement in operating 5280 Steak House. Mr. Rahmani testified to the same.

8. Stephen Glenn testified that he is a private investigator retained by plaintiff's counsel. At the end of October 2008, he visited 5280 Steak House. A waiter and the bartender told him that the menu was the same as Gallagher's, except for the addition of some items, and that everything was cooked the same way, including the manner in which the meat was aged.

9. Defendant Bruce Rahmani testified that he is the sole owner of 1020 15th Street, Inc. He said that the property he owns at 1480 Arapahoe Street consists of three restaurants: La Fondue, Mexican Picante Grill, and the former Gallagher's restaurant. The three restaurants share a common kitchen. Once the preliminary injunction was entered, he said that he was faced with three choices: (a) close the former Gallagher's space, which would have been expensive; (b) open something other than a steak house, which was financially risky; or (c) get out of the restaurant business at that location by leasing the space to someone else. For financial reasons, Mr. Rahmani chose the third option. Needing someone to lease the space quickly, Mr. Rahmani called Mr. Gonzalez, whom he knew and thought could run the restaurants. Mr. Rahmani told Mr. Gonzalez that, if Mr. Gonzalez could lease the space immediately, he would make him a good deal. They then negotiated a lease that waived rent for the period between October and December, 2008; required monthly rent of $12,000 between January and June, 2009; required monthly rent of $20,000 between July and December, 2009; and ended up requiring monthly rent of $35,000 between January 2011 and December 2013.

10. Mr. Rahmani said that on many occasions in the past he has had Ms. Ellis help lessees transfer liquor licenses, complete unemployment insurance, and fill out other paperwork associated with the leases. He said that he has Ms. Ellis perform such tasks, in part, to ensure that his name is removed from the paperwork. He testified that he was liable once for a franchisee's failure to pay royalties. He had transferred the

franchise to such person, who left Mr. Rahmani's name on the paperwork. Since his name was still on the franchise paperwork, Mr. Rahmani had to pay the royalties.

11.  Sarah Barrs testified that she is the General Manager of 5280 Steak House and La Fondue. She receives direction from Mr. Gonzalez. She does not report to or receive direction from Mr. Rahmani. Ms. Barrs said that she had OpenTable.com, an online restaurant reservation service, change the name of the restaurant from Gallagher's to 5280 Steak House, but otherwise is using the same OpenTable "system" as Gallagher's used. She also acknowledged that the description of 5280 Steak House posted on OpenTable.com is exactly the same as the description posted for Gallagher's when that restaurant was in operation. She is aware that, if someone calls the Gallagher's telephone number, that person will be directed to the new 5280 Steak House number.

B.    Legal Analysis

1.  Legal Standards

"Civil contempt is an appropriate remedy for the enforcement of a judicial decree, but it is a severe one which should be used only when necessary to sustain the authority of the court." *N.L.R.B. v. Shurtenda Steaks, Inc.*, 424 F.2d 192, 194 (10th Cir. 1970). "[I]n the civil contempt context, a plaintiff must prove liability by clear and convincing evidence." *F.T.C. v. Kuykendall*, 371 F.3d 745, 756 (10th Cir. 2004). The court in *Kuykendall* went on to explain that the movant "has the burden of proving, by clear and convincing evidence, (1) that a valid court order existed, (2) that the defendants had knowledge of the order, and (3) that the defendants disobeyed the order." *Id.* at 756–57 (citation and alteration marks omitted). Defendants in the present case do not challenge the existence or validity of the Order and admit that they were aware of it. Rather, the parties disagree as to the meaning of the Order's terms and whether there is clear and convincing evidence showing that defendants disobeyed the Order.

2.  Paragraph One of the Order

Plaintiff advances several theories regarding how defendants have violated the Court's October 8, 2008, preliminary injunction order. Plaintiff's contentions regarding Paragraph One of the Order focus on subparagraph (i), which applies to "Defendants, and any and all entities in which they have a direct or beneficial interest, and any and all persons or entities working in concert with them." This language closely tracks Federal Rule of Civil Procedure 65 regarding preliminary injunctions. *See* Fed. R. Civ. P. 65(d)(2) (2008) ("The order binds only the following who receive actual notice of it by personal service or otherwise: (A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C) other persons who are in active concert or participation with anyone described in [the first two categories.]"). There is no dispute that the preliminary injunction binds defendants Rahmani and 1020 15th St., Inc. as

well as their officers, agents, servants, employees, and attorneys. The Order enjoins such people:

> From directly or indirectly at any time or in any manner operating or doing business under any name or in any manner which might tend to give the general public the impression that defendants are operating a Gallagher's Restaurant, or any business similar thereto; by using, in any manner, or for any purpose, directly or indirectly, any of Gallagher's Proprietary Marks, confidential information, trade secrets, procedures, forms, techniques know-how or materials acquired by Defendants by virtue of the relationship established by the Franchise Agreement; by using any telephone number listed in any telephone directory under the names "Gallagher's", "Gallagher's Steakhouse" or any similar designation or directory listing which relates to the franchised Restaurant; and, by using any of the components, specifications and standards which comprise a part of the Gallagher's System.

Order, ¶ 1.

Plaintiff admits that there is insufficient evidence that Mr. Rahmani, 1020 15th St., or their officers, agents, servants, employees, or attorneys are directly or indirectly "operating" a business that violates the Order. There is also no evidence that either Mr. Rahmani or 1020 15th Street, Inc. has any operational control over 5280 Steak House or any right to share in its income or profits. Furthermore, there is insufficient evidence showing that the defendants are using Gallagher's intellectual property, the Gallagher's phone number, or any part of the Gallagher's system.

Plaintiff, however, argues that Mr. Gonzalez is a person "working in concert" with defendants to violate Paragraph One of the Order. Federal Rule of Civil Procedure 65(d)(2) refers to "persons who are in active concert or participation" with other parties bound by the injunction. The Tenth Circuit interpreted the phrase "persons who are in active concert or participation" to mean those otherwise bound by the order or encompassing arrangements "akin to alter ego, collusion, or identity of interest between a party and a nonparty" as well as "those situations where a nonparty with actual notice aids or abets a named defendant or his privy in violating the order." *Reliance Ins. Co. v. Mast Constr. Co.*, 84 F.3d 372, 377 (10th Cir. 1996) (interpreting similar language in the 1996 version of Rule 65 as it applied to temporary restraining orders) (citations and quotation marks omitted). However, other than the assistance provided by Ms. Ellis, which I discuss below, plaintiff has not shown that there is any identity of interest or any collusion between defendants and Mr. Gonzalez and/or 1480 Café, LLC in the operation of 5280 Steak House. Therefore, plaintiff has failed to show that defendants have violated the first paragraph of the Order.

3.  Paragraph Two of the Order

Plaintiff also asserts that defendants have violated Paragraph Two of the Order, which states:

> A Preliminary Injunction is entered enjoining Defendants, and any and all entities in which they have a direct or beneficial interest, and any and all persons or entities working in concert with them as follows:
>
> i.      From violating the covenant not to compete in the parties' Franchise Agreement by directly or indirectly engaging in any other steakhouse restaurant business within 15th Street's former Territory, within 50 miles of the perimeter of 15th Street's former Territory, or within 50 miles of the perimeter (or within) any Gallagher's Restaurant Territory (whether company-owned, franchised or otherwise established and operated) for a period of two years immediately following the Effective Date of this Order.

Article 14 of the Franchise Agreement is titled "Covenants Not to Compete." Motion for Preliminary Injunction, Exhibit A-1 at 22–24.[2]  Article 14 states, in part, that: "Franchisee will not directly or indirectly engage in any other steakhouse restaurant business . . . ."

The analysis discussed above in regard to Paragraph One of the Order applies equally to Paragraph Two, namely, that plaintiff has failed to show either that defendants are directly or indirectly engaging in a steakhouse business or that Mr. Gonzalez or 1480 Café, LLC are acting in concert with defendants to violate the covenant not to compete.  While it is true that Mr. Rahmani stands to benefit from 1480 Café, LLC's rental payments, which are partially derived from the operation of a competing steakhouse, I follow the majority rule in holding that the mere leasing of property to a competitor does not violate the terms of the non-compete clause signed by the parties.  *See National Propane Corp. v. Miller*, 18 P.3d 782, 787-788 (Colo. App. 2000); *Jensen International v. Kelley*, 32 P.3d 1205, 1209-1210 (Kan. App. 2001); *Wineteer v. Kite*, 397 S.W. 2d 752, 756-759 (Mo. App. 1965).[3]  Plaintiff could have

_____

[2] Defendants also signed a separate agreement entitled Confidentiality/Non-Competition Agreement, (Exhibit A-1, Exhibit B-1), which contains substantially the same terms.

[3] Both sides agree that Florida law controls the interpretation of the Franchise Agreement; however, neither side cited a Florida case regarding whether a party to a

included language in the Franchise Agreement prohibiting the franchisee from leasing property to a competitor, but did not do so. Similarly, Paragraph Two of the Order does not contemplate, and does not prohibit, defendants from leasing the property to a competitor. Without evidence of defendants somehow having a direct or indirect interest in the operation of 5280 Steak House, it cannot be said that defendants' lease to 1480 Café, LLC shows that Mr. Gonzalez was working in concert with defendants to violate Paragraph Two of the Order or the non-compete agreement.

Gayle Ellis, with Mr. Rahmani's knowledge and consent, helped Mr. Gonzalez in a variety of ways in early October to get 5280 Steak House open. As plaintiff pointed out, activities that may be routine in one context must be looked at differently when the actor is subject to an injunction. Ms. Ellis's actions, which are attributable to the defendants, constitute borderline violations of Paragraphs One and Two of the Order. However, the actions of Ms. Ellis do not justify the imposition of sanctions for the following reasons. First, Ms. Ellis has provided similar assistance to other persons who have assumed leases from Mr. Rahmani. Mr. Rahmani had an independent business reason to have her provide such assistance – it ensured that his name and the names of his companies were taken off the licenses and franchise agreements. Thus, Ms. Ellis's assistance was no different from that given to any other person entering into a lease, which does not demonstrate a purpose to evade the terms of the Order. Second, Ms. Ellis's help was brief in duration. While Ms. Ellis's assistance went beyond merely transferring licenses and, in fact, included helping fill out the articles of incorporation of 1480 Café, LLC , a competing business, her assistance was limited to the transition from Gallagher's to 5280 Steak House and does not evidence an effort by defendants to "engage" in another steakhouse restaurant in violation of either the non-compete clause of the Franchise Agreement or Paragraph Two of the Order. Therefore, plaintiff has failed to show by clear and convincing evidence that defendants have violated the second paragraph of the Order.

4. Paragraph Three of the Order

Finally, plaintiff contends that defendants violated Paragraph Three of the Order. Paragraph Three states: "A Preliminary Injunction is entered enjoining Defendants from effecting assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the directives of the injunction."

Paragraph Three of the Order was intended to buttress the terms of the first two paragraphs by preventing defendants from using shell corporations or other devices to operate a steakhouse at the former Gallagher's location. The Order did not contemplate Mr. Rahmani leasing the property to another entity, unconnected to him, that operates a competing steakhouse. While the lease to 1480 Café, LLC may, at first

non-compete agreement could lease property to a competitor.

blush, seem inconsistent with the Order, the Court is not now permitted to expand the scope of the injunction to include such a lease.  *See Denver-Greeley Valley Water Users Assoc. v. McNeil*, 131 F.2d 67, 69 (10th Cir. 1942) ("[I]n determining in contempt proceedings whether an order, judgment or decree of a court has been violated, such order, judgment or decree will not be expanded by implication beyond the meaning of its terms when considered in the light of the issues and the purpose for which the suit was brought.").  *Cf. Hardesty Co. v. Williams*, 368 F.3d 1029, 1031-1032 (8th Cir. 2004) ("Because, on its face, the agreement does not contractually prohibit the Williamses from simply leasing real property to a third-party who is also a competitor of Hardesty, we decline to invoke non-binding precedent so as to write into the agreement a term which is not there.").

Plaintiff argues that defendants have violated the third paragraph by leasing the restaurant space to Mr. Gonzalez and by having Ms. Ellis assist him in getting 5280 Steak House up and running.  Although the lease between Mr. Rahmani and Mr. Gonzalez was not entered into at "arms-length," the circumstances do not evince an improper purpose.  The key language of Paragraph Three is the closing phrase: "for the purpose of circumventing or otherwise avoiding the directives of the injunction."  Mr. Rahmani's actions were not for the purpose of avoiding the directives of the injunction.  Instead, I find that his actions were directed at divesting himself of the operation of the three restaurants located at or near 1480 Arapahoe Street.

C.      Conclusion

Plaintiff has failed to meet its burden of proving by clear and convincing evidence that defendants have violated the Court's preliminary injunction order – the third requirement for a finding of civil contempt – and therefore plaintiff's motion for sanctions must be denied.


It is therefore ORDERED that plaintiff's Motion for Contempt Sanctions [Docket No. 29] is DENIED.


DATED December 2, 2008.

BY THE COURT:


s/Philip A. Brimmer_____
PHILIP A. BRIMMER
United States District Judge